Ronald A. Valenzuela (SBN 210025)
ronald.valenzuela@lathropgpm.com
LATHROP GPM LLP
2029 Century Park East, Suite 1280N
Los Angeles, CA 90067
Telephone: (310) 789-4600
Facsimile: (310) 789-4601

Sheldon H. Klein (admitted *pro hac vice*)
sheldon.klein@lathropgpm.com
600 New Hampshire Ave, NW
Suite 700
Washington, DC 20037
Telephone: (202) 295-2200

Eric D. Sidler (admitted *pro hac vice*)
eric.sidler@lathropgpm.com
2345 Grand Blvd., Suite 2200
Kansas City, MO 644108
Telephone: (816) 460-5311

Lee B. Bennin (admitted *pro hac vice*)
lee.bennin@lathropgpm.com
80 South 8th Street
3100 IDS Center
Minneapolis, MN 55402
Telephone: (612) 632-3203

Attorneys for Plaintiff KB Home

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KB HOME,<br><br>Plaintiff,<br><br>v.<br><br>KINGSBARN REALTY CAPITAL, LLC; KB EXCHANGE PROPERTIES, LLC; KINGSBARN REAL ESTATE CAPITAL, LLC; KB PROPERTY ADVISORS, INC.; KB PROPERTY ADVISORS, LLC; and KINGSBARN CAPITAL & DEVELOPMENT, LLC,<br><br>Defendants. | Case No. 2:24-CV-4153-CBM (MAAx)<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) SERVICE MARK INFRINGEMENT [15 U.S.C. § 1114(a)]**<br><br>**(2) UNFAIR COMPETITION [15 U.S.C. § 1125(a)]**<br><br>**(3) COMMON LAW SERVICE MARK INFRINGEMENT**<br><br>**(4) COMMON LAW UNFAIR COMPETITION**<br><br>**(5) UNFAIR COMPETITION [CAL. BUS. & PROF. CODE §§ 17200, *et seq.*]** |

KINGSBARN REALTY CAPITAL, LLC; KB EXCHANGE PROPERTIES, LLC; KINGSBARN REAL ESTATE CAPITAL, LLC; KB PROPERTY ADVISORS, INC.; KB PROPERTY ADVISORS, LLC,

Counter-Plaintiffs,

v.

KB HOME,

Counter-Defendant.

## NATURE OF THE CASE

This is an action for service mark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., the common law of the State of California, and Cal. Bus. & Prof. Code §§ 17200 *et seq*.

## THE PARTIES

### *KB Home*

1.    Plaintiff KB Home ("KB") is a Delaware corporation with a principal place of business at 10990 Wilshire Boulevard, Los Angeles, California 90024.

2.    KB is one of the largest homebuilders in the United States, with extensive operations and sales in California.

3.    KB builds and sells homes and other residences, and offers mortgages, insurance, and related services under the KB® and KB HOME® service marks and related service marks.

### *Kingsbarn Realty Capital, LLC*

4.    Defendant Kingsbarn Realty Capital, LLC ("Kingsbarn Realty Capital") is a Nevada limited liability company having a principal place of business at 1645 Village Center Circle, Suite 200, Las Vegas, Nevada 89134.

5.    On information and belief, an individual named Jeff Pori is Kingsbarn Realty Capital's chief executive officer.

6.    On information and belief, Kingsbarn Realty Capital and/or its subsidiaries, divisions, or affiliates, have physical office locations in California, including but not limited to Los Angeles, Newport Beach, Long Beach, San Diego, San Francisco, and Menlo Park.

7.    On information and belief, a Kingsbarn Realty Capital subsidiary called "Kingsbarn Capital & Development" serves as Kingsbarn Realty Capital's "real estate private equity and development arm" and has a physical office at 2500 Sand Hill Road, Suite 320, Menlo Park, CA 94025.

8.    On information and belief, a division of Kingsbarn Realty Capital titled "Kingsbarn Development Opportunities" develops residential and commercial real estate properties, including properties located within the State of California.

9.    Kingsbarn Realty Capital's website, www.kingsbarn.com, has a page titled "Kingsbarn Portfolio" that lists properties and Delaware Statutory Trusts ("DSTs") that are currently in Kingsbarn Realty Capital's "portfolio." The portfolio lists properties and DSTs located around the country, including in this judicial district, such as Griffin Towers in Santa Ana; HERE Office Complex, Buildings A & B in Laguna Hills; Fullerton Towers in Fullerton; Redhawk Medical Center in Temecula; Stadium Crossings in Anaheim; Palm Terrace in Lake Forest; Gramercy Plaza in Torrance; The Phoenix Building in Van Nuys; Park Plaza Medical Office Building in Redlands; and Foothill Corporate Center I in Orange County. A true and correct printout of this website page is attached as **Exhibit A**.

### *KB Exchange Properties, LLC*

10.    Defendant KB Exchange Properties, LLC ("KB Exchange Properties") is a Nevada limited liability company having a principal place of business at 1645 Village Center Circle, Suite 200, Las Vegas, Nevada 89134.

11.  On information and belief, KB Exchange Properties is a subsidiary, division, and/or affiliate of Kingsbarn Realty Capital.

12.  On information and belief, Kingsbarn Realty Capital owns and controls KB Exchange Properties.

13.  KB Exchange Properties' corporate filings state that Kingsbarn Realty Capital is an active "manager" of KB Exchange Properties.

14.  KB Exchange Properties' corporate filings state that Jeff Pori is an inactive "manager" of KB Exchange Properties. Mr. Pori is also Kingsbarn Realty Capital's chief executive officer.

15.  Kingsbarn Realty Capital and KB Exchange Properties have the same principal place of business, at 1645 Village Center Circle, Suite 200, Las Vegas, NV 89134.

16.  KB Exchange Properties holds itself out as "A Kingsbarn Company."

### *Kingsbarn Real Estate Capital, LLC*

17.  Defendant Kingsbarn Real Estate Capital, LLC ("Kingsbarn Real Estate Capital") is a California limited liability company.

18.  On information and belief, Kingsbarn Real Estate Capital's principal place of business is 2500 Sand Hill Road, Suite 320, Menlo Park, CA 94025.

19.  On information and belief, Kingsbarn Real Estate Capital is a subsidiary, division, and/or affiliate of Kingsbarn Realty Capital.

20.  On information and belief, Kingsbarn Realty Capital owns and controls Kingsbarn Real Estate Capital.

21.  Kingsbarn Real Estate Capital's corporate filings state that Kingsbarn Realty Capital is the "manager" of Kingsbarn Real Estate Capital.

22.  The corporate filings for Kingsbarn Realty Capital and Kingsbarn Real Estate Capital both list an address of 1645 Village Center Circle, Suite 200, Las Vegas, NV 89134.

*KB Property Advisors, Inc. and KB Property Advisors, LLC*

23.    Defendant KB Property Advisors, Inc. is a California corporation having a principal place of business at 11622 El Camino Real, Suite 100, Del Mar, California 92130.

24.    KB Property Advisors, Inc. is a real estate brokerage licensed in California.

25.    On information and belief, KB Property Advisors, Inc. is a real estate brokerage affiliate of Kingsbarn Realty Capital.

26.    KB Property Advisors, Inc.'s real estate brokerage license information lists a "Mailing Address" of 1645 Village Center Circle, Suite 200, Las Vegas, Nevada 89134.

27.    KB Property Advisors, Inc.'s real estate brokerage license information lists a "Main Office" address of 2500 Sand Hill Road, Suite 320, Menlo Park, CA 94025.

28.    On information and belief, KB Property Advisors, Inc. is a subsidiary, division, and/or affiliate of Kingsbarn Realty Capital.

29.    On information and belief, Kingsbarn Realty Capital owns and controls KB Property Advisors, Inc.

30.    KB Property Advisors, Inc.'s corporate filings state that Jeff Pori is KB Property Advisors, Inc.'s chief executive officer, secretary, and chief financial officer, as well as a director. Mr. Pori is also the chief executive officer of Kingsbarn Realty Capital.

31.    Defendant KB Property Advisors, LLC is a Nevada limited liability company having a principal place of business at 1645 Village Center Circle, Suite 200, Las Vegas, Nevada 89134.

32.    On information and belief, KB Property Advisors, LLC is a subsidiary, division, and/or affiliate of Kingsbarn Realty Capital.

33.    On information and belief, Kingsbarn Realty Capital owns and controls KB Property Advisors, LLC.

34.    KB Property Advisors, LLC's corporate filings state that its active "manager" is Jeff Pori, who is also the chief executive officer of Kingsbarn Realty Capital.

35.    KB Property Advisors, LLC holds itself out as the brokerage affiliate of Kingsbarn Realty Capital.

### *Kingsbarn Capital & Development, LLC*

36.    Defendant Kingsbarn Capital & Development, LLC ("Kingsbarn Capital & Development") is a Nevada limited liability company having a principal place of business at 1645 Village Center Circle, Suite 200, Las Vegas, Nevada 89134.

37.    On information and belief, Kingsbarn Capital & Development is a subsidiary, division, and/or affiliate of Kingsbarn Realty Capital.

38.    On information and belief, Kingsbarn Realty Capital owns and controls Kingsbarn Capital & Development.

39.    Kingsbarn Capital & Development's corporate filings state that Jeff Pori and Phil Mader are the active "managers" of Kingsbarn Capital & Development. Mr. Pori is also Kingsbarn Realty Capital's chief executive officer. Mr. Mader is the President of Kingsbarn Capital & Development.

40.    Kingsbarn Capital & Development is one of Kingsbarn Realty Capital's "in-house development groups" that acquires and develops residential and commercial real estate properties.

41.    Kingsbarn Capital & Development's current portfolio of existing and in-development real estate development projects includes residential and commercial developments located throughout the country, and in particular in the western United States, including in the State of California and this judicial district.

42.    Kingsbarn Realty Capital, KB Exchange Properties, Kingsbarn Real Estate Capital, KB Property Advisors, LLC, and Kingsbarn Capital & Development all have the same principal place of business at 1645 Village Center Circle, Suite 200, Las Vegas, NV 89134.

43.    On information and belief, Kingsbarn Realty Capital, KB Exchange Properties, Kingsbarn Real Estate Capital, KB Property Advisors, Inc., KB Property Advisors, LLC, and Kingsbarn Capital & Development have the same ultimate ownership and control. Hereinafter, when they are not named individually, all of these defendants are collectively referred to as "Defendants."

## JURISDICTION AND VENUE

44.    This Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338. This Court's jurisdiction over the state law and common law claims arises under 28 U.S.C. § 1338(b), because those claims are joined with substantial and related claims under federal trademark law, and under 28 U.S.C. § 1367(a), under this Court's supplemental jurisdiction.

45.    This Court has personal jurisdiction over Kingsbarn Realty Capital because Kingsbarn Realty Capital, itself or through its affiliate(s): (a) maintains continuous and systematic business connections with California and this judicial district, including, without limitation, its operation and/or sponsorship of numerous DSTs in California which serve California residents; (b) regularly solicits and serves customers in California and this judicial district, including, without limitation, in connection with its operation and/or sponsorship of DSTs in California; (c) has, on information and belief, transacted business in California and this judicial district under the names "KB Property Advisors" and "KB Exchange Trust," which are at issue in this case; (d) has, on information and belief, transacted business in California and this judicial district via its Kingsbarn Development Opportunities division; and (e) owns and has control over its subsidiaries, divisions, and/or affiliates KB

Exchange Properties, Kingsbarn Real Estate Capital, KB Property Advisors, Inc., KB Property Advisors, LLC, and Kingsbarn Capital & Development, such that the contacts of KB Exchange Properties, Kingsbarn Real Estate Capital, KB Property Advisors, Inc. KB Property Advisors, LLC, and Kingsbarn Capital & Development within the State of California and this judicial district may be imputed to Kingsbarn Realty Capital.

46.    This Court has personal jurisdiction over KB Exchange Properties because KB Exchange Properties, itself or through its affiliate(s): (a) maintains continuous and systematic business connections with California and this judicial district, including, without limitation, in connection with the operation and/or sponsorship of numerous DSTs in California which serve California residents; (b) regularly solicits and serves customers in California and this judicial district including, without limitation, in connection with DSTs in California; and (c) has, on information and belief, transacted business in California and this judicial district under the name "KB Exchange Trust," which is at issue in this case.

47.    This Court has personal jurisdiction over Kingsbarn Real Estate Capital because, on information and belief, Kingsbarn Real Estate Capital is subject to both general and specific personal jurisdiction in the State of California. On information and belief, Kingsbarn Real Estate Capital is a California limited liability company, has a principal place of business located in this judicial district, and regularly transacts business in the State of California and this judicial district, including, without limitation, in connection with the operation and/or sponsorship of DSTs in California.

48.    This Court has personal jurisdiction over KB Property Advisors, Inc. because, on information and belief, KB Property Advisors, Inc. is subject to both general and specific personal jurisdiction in the State of California. On information and belief, KB Property Advisors, Inc. is a California corporation, has a principal place of business located in this judicial district, and regularly transacts business in

the State of California and this judicial district, including, without limitation, under the name "KB Property Advisors," which is at issue in this case, as well as in connection with the operation and/or sponsorship of DSTs in California.

49.    This Court has personal jurisdiction over KB Property Advisors, LLC because KB Property Advisors, LLC itself or through its affiliate(s): (a) maintains continuous and systematic business connections with California and this judicial district, including, without limitation, in connection with the operation and/or sponsorship of numerous DSTs in California which serve California residents; (b) regularly solicits and serves customers in California and this judicial district including, without limitation, in connection with DSTs in California; and (c) has, on information and belief, transacted business in California and this judicial district under the name "KB Property Advisors," which is at issue in this case.

50.    This Court has personal jurisdiction over Kingsbarn Capital & Development because Kingsbarn Capital & Development itself or through its affiliate(s): (a) maintains continuous and systematic business connections with California and this judicial district, including, without limitation, in connection with the development of residential and commercial real estate properties in this judicial district; (b) regularly solicits and serves customers in California and this judicial district including, without limitation, in connection with the development of residential and commercial real estate properties in this judicial district; and (c) has, on information and belief, transacted business in California and this judicial district under the names "KB Property Advisors," "KB Exchange Trust," and other "KB"-formative marks, which are at issue in this case.

51.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to KB's claims occurred in this judicial district; because Defendants are entities with the capacity to sue and be sued under applicable law and are subject to this Court's personal jurisdiction with respect to this civil action; because Defendants conduct business under one or more of the

names at issue in this matter in the State of California, including within this judicial district; because KB has its principal place of business in this judicial district; and because KB continues to be harmed by Defendants' wrongful conduct in this judicial district, including, without limitation, Defendants' use of the names "KB," "KB Property Advisors," "KB Exchange Properties," and "KB Exchange Trust."

## KB'S SERVICE MARK RIGHTS

52.     KB is the owner of all right, title, and interest in and to a family of KB and KB HOME service marks (the "KB® Marks"), including but not limited to the following marks and registrations therefor on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Mark and Reg. No. | Filing / Registration / First-Use Dates | Services |
|---|---|---|
| KB HOME<br><br>Reg. No. 2,825,554 | Filing Date:<br>October 26, 2000<br><br>Registration Date:<br>March 23, 2004<br><br>First-Use Date:<br>Mar. 6, 2002 | Mortgage lending in connection with the construction and brokerage of single family and multiple family dwelling units. |
| KB HOME<br><br>Reg. No. 2,832,387 | Filing Date:<br>October 26, 2000<br><br>Registration Date:<br>April 13, 2004<br><br>First-Use Date:<br>Jan. 17, 2001 | Construction services, namely, planning, laying out and construction of residential communities; construction of single family and multiple family dwelling units; real estate development. |
| KB<br><br>Reg. No. 2,706,002 | Filing Date:<br>October 26, 2000<br><br>Registration Date:<br>April 15, 2003<br><br>First-Use Date:<br>Mar. 1974 | Construction services, namely, planning, laying out and construction of residential communities; construction of single family and multiple family dwelling units; real estate development. |

| Mark and Reg. No. | Filing / Registration / First-Use Dates | Services |
|---|---|---|
| KB HOME MORTGAGE<br><br>Reg. No. 2,774,497 | Filing Date:<br>April 4, 2001<br><br>Registration Date:<br>October 21, 2003<br><br>First-Use Date:<br>Mar. 6, 2002 | Mortgage lending services in connection with the construction of, and to assist in the purchase of, single family and multiple family dwelling units. |
| KB URBAN<br><br>Reg. No. 3,303,964 | Filing Date:<br>September 30, 2005<br><br>Registration Date:<br>October 2, 2007<br><br>First-Use Date:<br>June 13, 2006 | Construction services, namely, planning, laying out and construction of residential communities; construction of single family and multiple family dwelling units; real estate development. |
| KB HOME INSURANCE AGENCY<br><br>Reg. No. 6,072,334 | Filing Date:<br>December 19, 2018<br><br>Registration Date:<br>June 9, 2020<br><br>First-Use Date:<br>Mar. 4, 2002 | Insurance agency, administration, underwriting, and consulting services in the field of homeowner's insurance, property and casualty insurance, and mortgage payment protection insurance. |
| ONLY AT KB<br><br>Reg. No. 4,770,256 | Filing Date:<br>July 10, 2014<br><br>Registration Date:<br>July 7, 2015<br><br>First-Use Date:<br>Nov. 2014 | Construction services, namely, planning, laying out and construction of residential communities; construction of single family and multiple family dwelling units; real estate development. |

53.    KB's Registration Nos. 2,825,554; 2,832,387; 2,706,002; 2,774,497; 3,303,964; and 4,770,256 are incontestable pursuant to 15 U.S.C. §§ 1065 and 1115(b), and are thus conclusive evidence of the registrations' validity and of the validity of the marks covered by each registration, and of KB's ownership of, and exclusive right to use, the marks covered by the registrations. KB's Registration No. 6,072,334 is *prima facie* evidence of the registration's validity and of the validity of the mark covered by the registration, and of KB's ownership of, and exclusive right to use, the mark covered by the registration. A copy of the USPTO service mark

registration certificate and a printout of USPTO records showing the current status and title for each of the registrations listed in the preceding paragraph is attached as **Exhibit B**.

54.    The KB® Marks have been and are used in connection with a variety of construction and financial services for many years, namely, planning, laying out and construction of residential communities; construction of single-family and multiple-family dwelling units; real estate development; mortgage lending services in connection with the construction of, and to assist in the purchase of, single-family and multiple-family dwelling units; insurance agency, administration, underwriting, and consulting services in the field of homeowner's insurance, property and casualty insurance; and mortgage payment protection insurance, as described in the table in Paragraph 44 above. The services offered under the KB® Marks include services closely related to those covered by the above registrations, for example, residential real estate sales and related financial services.

55.    KB's residential housing communities are commonly referred to using the naming convention "KB Home" followed by a Location or Neighborhood Identifier.  For example, a KB community located in Lancaster, California is referred to as "KB Home Sonora;" a community located in Valencia, California is referred to as "KB Home Crimson at Valencia;" a community located in San Pedro, California is referred to as "KB Home Skyview at Ponte Vista;" and a community located in Santa Clarita, California is referred to as "KB Home Trenton Heights."

56.    In addition to single-family residential housing communities, KB builds and sells multiple-family homes such as townhomes. Examples of communities of such homes include Groves at Inspirada in Henderson, Nevada; Crimson at Valencia in Valencia, California; Liberty in Oceanside, California; and Latitude at Communications Hill in San Jose, California.

57.    KB also develops and builds mixed commercial-residential communities, often consisting of commercial space on the building's first floor and

residential units located above. Examples of such communities include Playa Vista in West Los Angeles, California; Ascent at Warner Center in Los Angeles, California; Wheeler Plaza in San Carlos, California; and Rhythm in Long Beach, California.

58.     The KB® Marks are inherently distinctive. Additionally, they have been extensively used, promoted, and advertised by KB in connection with its services for many years, and are thus distinctive indicators of KB as the source of high-quality services offered under the KB® Marks, generating valuable goodwill for the KB® Marks and for KB.

59.     In addition to the priority rights enjoyed by KB based on the filing dates of its federal registrations, KB enjoys use-based priority rights. KB has used the mark KB® in connection with residential real estate construction and sales services since at least 1974; it has used the mark KB HOME® in connection with residential real estate construction and sales services since at least 2001; it has used the marks KB HOME® and KB HOME MORTGAGE® in connection with mortgage lending services since at least 2002; it has used the mark KB URBAN® in connection with real estate construction and sale services since at least 2006; and it has used the marks KB HOME® and KB HOME INSURANCE AGENCY® in connection with insurance-related services since at least 2002.

60.     As a result of the longstanding and extensive use and promotion of the KB® Marks in connection with KB's services for many years, the marks are distinctive and well-known to consumers and are strong indicators of KB as the source for its high-quality home construction, sales, mortgage lending, and insurance services.

### DEFENDANTS' ACTIVITIES

61.     Kingsbarn Realty Capital holds itself out as a real estate private equity firm that provides structured real estate investments to investors.

62.     On information and belief, Kingsbarn Realty Capital owns, operates, and/or has control over the domain <kingsbarn.com> and the content on the website associated with the domain, www.kingsbarn.com (the "Kingsbarn Website").

63.     The Kingsbarn Website states, "Kingsbarn Realty Capital acquires commercial real estate assets throughout the United States. We offer both direct and indirect real estate investments and provide our clients with the opportunity to invest in our various structured real estate private placements."

64.     Kingsbarn Realty Capital has two in-house development groups. One in-house development group is Kingsbarn Capital & Development, which develops residential and commercial real estate properties intended to be held and owned by Defendants long-term.

65.     On information and belief, Kingsbarn Realty Capital and/or Kingsbarn Capital & Development own, operate, and/or have control over the domain <kbdev.com> and the content on the website associated with the domain, www.kbdev.com.

66.     Kingsbarn Capital & Development's portfolio of properties includes existing properties and properties in development across several property types and across many western U.S. markets, including multifamily communities, student housing, hospitality, mixed-use, and for-sale residential properties, including single-family homes. Examples of properties within Kingsbarn Capital & Development's portfolio include a mixed-use ground-up development project in Kings Beach, California titled "39° North," a multifamily project located in Durango, Colorado titled "Affinity at Three Springs," a multifamily project located in Carson City, Nevada titled "Altair," a single-family resale and rental development project located in Southern California titled "Citivest," a single-family home residential entitlement project in Orange County, California, and a single-family home lot development project in Bucks County, Pennsylvania titled "Carriage Hill,"

67.     The second in-house development group is "a boutique division within Kingsbarn Realty Capital" titled "Kingsbarn Development Opportunities" that develops residential and commercial real estate that Defendants intend to sell.

68.     Properties that have been developed by the Kingsbarn Development Opportunities include student housing facilities, single-family homes, travel centers, and quick-serve restaurants. Examples of properties within Kingsbarn Development Opportunities' portfolio include a single-family home development project in Hawaii titled "The Vista at Mauna Kea Resort" and a student housing development project in Oxford, Mississippi titled "The Cottages at Hooper Hill."

69.     The Kingsbarn Website states, "We provide real estate investors with a simplified 1031-exchange solution through Delaware Statutory Trust (DST) ownership interests."

70.     On information and belief, properties developed by Defendants through Kingsbarn Capital & Development and Kingsbarn Development Opportunities have been and currently are structured into DSTs and/or other investment products. For example, the DST for "The Cottages at Hooper Hill" is KB Hooper Hill, DST and the DST for "The Grove at Mankato" is KB Grove at Mankato, DST.

71.     On information and belief, Kingsbarn Realty Capital, through its subsidiary KB Exchange Properties, does business under the name KB EXCHANGE TRUST and uses the logo:



in connection with real estate development and investment services (collectively, the "KB EXCHANGE TRUST Marks").

72.     The Kingsbarn Website states, "KB Exchange Trust provides real estate investors throughout the U.S. with 1031-exchange eligible property ownership through its Delaware Statutory Trust ('DST') programs."

73.    On information and belief, Kingsbarn Real Estate Capital is a DST real estate sponsor that only offers services to investors in California.

74.    The Kingsbarn Website states, "KB Exchange Trust and Kingsbarn Real Estate Capital, as a sponsor of DSTs, acquire high-quality commercial income properties, place[] non-recourse financing on the properties, and retain[] a national, third-party property and asset management firm to manage the properties and make monthly distributions to all investors."

75.    The Kingsbarn Website has a page titled "Kingsbarn Portfolio" that lists more than 100 properties held in DSTs sponsored by Kingsbarn Realty Capital, KB Exchange Trust (the trade name of KB Exchange Properties), and/or Kingsbarn Real Estate Capital (the "Kingsbarn DSTs").

76.    Defendants selected and used names for the Kingsbarn DSTs utilizing the naming convention "KB [Location and/or Business Identifier], DST." For example, the DST associated with a property located in Redlands, California is named "KB Park Plaza, DST" and the DST associated with a property located in Fullerton, California is named "KB Fullerton Towers, DST."

77.    On information and belief, Kingsbarn Realty Capital, KB Exchange Properties, and/or Kingsbarn Real Estate Capital own and control limited liability companies that own and/or control the properties in the Kingsbarn DSTs. For example, on information and belief, KB Park Plaza, DST is held by an entity titled "KB Park Plaza MT, LLC" and KB Fullerton Towers, DST is held by an entity titled "KB Fullerton Towers MT, LLC."

78.    The Kingsbarn Website has a page titled "Real Estate Advisory" that displays information about "KB Property Advisors" and states, "KB Property Advisors, LLC ('KBPA') is the brokerage affiliate of Kingsbarn Realty Capital, LLC. For more than a decade, KBPA has successfully advised both institutional clients as well as private investors throughout the United States."

79.    On information and belief, Kingsbarn Realty Capital, through its subsidiaries KB Property Advisors, Inc. and KB Property Advisors, LLC, does business under the name KB PROPERTY ADVISORS and uses the logo



in connection with its real estate development and investment services (collectively, the "KB PROPERTY ADVISORS Marks").

80.    KB Property Advisors, Inc. and KB Property Advisors, LLC have provided and continue to provide brokerage services related to the Kingsbarn DSTs.

81.    KB Property Advisors, Inc. and KB Property Advisors, LLC act as the real estate broker for all of Defendants' property acquisitions.

82.    KB Property Advisors, Inc. and KB Property Advisors, LLC act as the entities that contract with and provide asset and property management services for properties owned by Defendants.

83.    On information and belief, KB Property Advisors, Inc. and/or KB Property Advisors, LLC act as the real estate broker for all properties acquired and/or developed by Kingsbarn Capital & Development and Kingsbarn Development Opportunities.

84.    On information and belief, Kingsbarn Realty Capital, KB Exchange Properties, Kingsbarn Real Estate Capital, KB Property Advisors, Inc., KB Property Advisors, LLC, and/or Kingsbarn Capital & Development have used the KB EXCHANGE TRUST Marks in commerce via internet advertising and at the Kingsbarn Website as well as websites associated with the domain names <kbxtrust.com> and <kbexchangetrust.com>.

85.    On information and belief, Kingsbarn Realty Capital, KB Exchange Properties, Kingsbarn Real Estate Capital, KB Property Advisors, Inc., KB Property Advisors, LLC, and/or Kingsbarn Capital & Development have used the KB

PROPERTY ADVISORS Marks and other "KB"-formative marks in commerce via internet advertising and at the Kingsbarn Website as well as websites associated with the domain names <kbpropertyadvisors.com>, <kbprops.com>, <kbdev.com>, <kb-1031.com>, <kb1031.com>, <kbexchangetrust.com>, <kbtrustco.com>, and <kbxtrust.com>.

86.    On information and belief, Defendants have used the KB PROPERTY ADVISORS Marks and other "KB"-formative marks in commerce in connection with the acquisition, sale, and/or development of one or more properties acquired and/or developed by Kingsbarn Capital & Development and Kingsbarn Development Opportunities.

87.    On information and belief, Defendants have used the KB PROPERTY ADVISORS Marks and other "KB"-formative marks in commerce in connection with the offer, sale, and/or provision of property management services for one or more properties acquired and/or developed by Kingsbarn Capital & Development and Kingsbarn Development Opportunities.

88.    On information and belief, one or more properties acquired and/or developed by Kingsbarn Capital & Development and Kingsbarn Development Opportunities have been structured into DSTs that are administered or sponsored by KB Exchange Trust.

89.    On information and belief, Defendants have used the KB EXCHANGE TRUST Marks and other "KB"-formative marks in commerce in connection with the administration or sponsorship of DSTs for one or more properties acquired and/or developed by Kingsbarn Capital & Development and Kingsbarn Development Opportunities.

90.    On October 20, 2020, Kingsbarn Realty Capital applied to the USPTO to register the mark "KB EXCHANGE TRUST" in connection with the following services in International Class 36: "Financial investment services, namely, administering a statutory trust to provide an investment vehicle for 1031-exchange

real estate owners in income-producing commercial real estate." *See* Application Serial No. 90266961 (the "KB EXCHANGE TRUST Application"), attached hereto as **Exhibit C**.

91.    In support of the KB EXCHANGE TRUST Application, Kingsbarn Realty Capital submitted as a specimen of use a printout of the Kingsbarn Website displaying the KB EXCHANGE TRUST mark. *See* specimen attached hereto as **Exhibit D**.

92.    The services described in the KB EXCHANGE TRUST Application are closely related to the services sold by KB under the KB® Marks and protected by the registrations therefor.

93.    Also on October 20, 2020, Kingsbarn Realty Capital applied to the USPTO to register the mark "KB PROPERTY ADVISORS" for use in connection with the following goods in International Class 37: "Commercial real estate brokerage services; Commercial real estate asset management services; and Commercial real estate property management services." *See* Application Serial No. 90266875 (the "KB PROPERTY ADVISORS Application"), attached hereto as **Exhibit E**. The KB PROPERTY ADVISORS Application and the KB EXCHANGE TRUST Application are hereinafter collectively referred to as the "Kingsbarn Applications."

94.    In support of the KB PROPERTY ADVISORS Application, Kingsbarn Realty Capital submitted as a specimen of use a printout of the Kingsbarn Website displaying the KB PROPERTY ADVISORS mark. *See* specimen attached hereto as **Exhibit F**.

95.    The services described in the KB PROPERTY ADVISORS Application are closely related to the services sold by KB under the KB® Marks and protected by the registrations therefor.

96.    In each of the Kingsbarn Applications, Kingsbarn Realty Capital disclaimed all terms except the term "KB." Thus, "KB" is the dominant portion, and

the only distinctive portion, of each mark that is the subject of the Kingsbarn Applications.

97.    In December 2020, upon learning about the Kingsbarn Applications and Defendants' use of "KB" and the KB EXCHANGE TRUST Marks and the KB PROPERTY ADVISORS Marks, KB filed letters of protest with the USPTO against each of the Kingsbarn Applications.

98.    In a Nonfinal Office Action dated April 27, 2021, in connection with the KB EXCHANGE TRUST Application, the USPTO Examining Attorney cited KB's Registration Numbers 2,825,554 (for KB HOME®), 2,832,387 (for KB HOME®), 2,706,002 (for KB®), 2,774,497 (for KB HOME MORTGAGE®), and 6,072,334 (for KB HOME INSURANCE AGENCY®) as grounds for refusal of the KB EXCHANGE TRUST Application due to a likelihood of confusion with the registered marks. The Examining Attorney also indicated that if the marks in KB's pending service mark Application Serial Nos. 88,234,700 (for KB HOME & Design), 88,234,689 (for KB HOME INSURANCE AGENCY & Design), and 88,234,686 (for KB HOME MORTGAGE COMPANY) are registered, they also may be cited as grounds for refusal of the KB EXCHANGE TRUST Application due to a likelihood of confusion with the registered mark(s).

99.    In a Nonfinal Office Action dated April 27, 2021 in connection with the KB PROPERTY ADVISORS Application, the USPTO Examining Attorney cited KB's Registration Numbers 2,825,554 (for KB HOME®), 2,832,387 (for KB HOME®), 2,706,002 (for KB®), 2,774,497 (for KB HOME MORTGAGE®), and 6,072,334 (for KB HOME INSURANCE AGENCY®) as grounds for refusal of the KB PROPERTY ADVISORS Application due to a likelihood of confusion with the registered marks. The Examining Attorney also indicated that if the marks in KB's pending service mark Application Serial Nos. 88,234,700 (for KB HOME & Design), 88,234,689 (for KB HOME INSURANCE AGENCY & Design), and 88,234,686 (for KB HOME MORTGAGE COMPANY) are registered, they also may be cited as

grounds for refusal of the KB PROPERTY ADVISORS Application due to a likelihood of confusion with the registered mark(s).

100.   In May 2021, KB contacted Kingsbarn Realty Capital and requested that the Kingsbarn Applications be withdrawn and that all use of any names or marks comprising or incorporating KB cease.

101.   Between May 2021 and January 2022, counsel for KB and counsel for Defendants exchanged correspondence in an effort by KB to resolve the matter. The parties did not reach a resolution but, in the meantime, the USPTO suspended action on the Kingsbarn Applications.

102.   On October 31, 2023, Kingsbarn Realty Capital issued a press release, attached hereto as **Exhibit G**, entitled "Kingsbarn Realty Capital Announces KB Property Advisors Expansion," indicating its intent to increase its use of "KB" in connection with an expansion of "its asset and property management division, KB Property Advisors," which serves as "a subsidiary of the company." This press release also states that Kingsbarn Realty Capital, through "KB Property Advisors," manages "student housing assets."

103.   Developing, providing, and managing student housing are services that are highly related to the housing and community development services provided and sold by KB.

104.   Defendants continue to use "KB" in the manner described above, including in connection with Defendants' company names, the KB EXCHANGE TRUST Marks, the KB PROPERTY ADVISORS Marks, the DST names that feature "KB," and in other ways, to advertise and sell real estate, real estate investments, real estate development, property management services, and financial services.

105.   Defendants' company names, the KB EXCHANGE TRUST Marks, the KB PROPERTY ADVISORS Marks, the DST names that feature "KB," and other names and marks that comprise or include "KB" are highly similar to KB's KB® Marks in appearance, sound, and meaning; are used in connection with services that

are highly related to services sold by KB under the KB® Marks; and are likely to cause confusion, are likely to cause mistake, and are likely to deceive.

106.    On information and belief, Defendants were well aware of KB's senior rights in the KB® Marks at the time Defendants commenced using names and marks that comprised and contained KB; at the time Defendant Kingsbarn Realty Capital filed the Kingsbarn Applications; and at the time Defendants expanded their use of KB as described in the press release of October 31, 2023. Defendants also knew that their actions infringed KB's KB® Marks. Nevertheless, Defendants commenced and continued their wrongful actions, with willful intent to infringe the KB® Marks.

## COUNT I

### SERVICE MARK INFRINGEMENT (15 U.S.C. § 1114(1)(a))

107.    KB incorporates the allegations in all preceding paragraphs by reference as if fully set forth herein.

108.    As a separate cause of action and ground for relief, KB alleges that Defendants have been and are currently engaged in acts constituting infringement of KB's KB® Marks within the meaning of Section 32(1) of the Trademark Act of 1946, 15 U.S.C. § 1114(1), through Defendants' use, in commerce, of marks, names, and logos that comprise or contain "KB" in connection with the sale, offering for sale, and advertisement of services that are closely related to the services provided by KB under the KB® Marks and in a manner that creates a likelihood of confusion, mistake, or deception.

109.    Defendants' infringing conduct is causing and is likely to cause injury to the public, and is causing and is likely to cause KB to incur damages and suffer irreparable injury for which KB has no adequate remedy at law. KB is entitled to damages and injunctive relief pursuant to 15 U.S.C. §§ 1114, 1116, 1117, and 1118.

## COUNT II

## UNFAIR COMPETITION (15 U.S.C. § 1125(a))

110.   KB incorporates the allegations in all preceding paragraphs by reference as if fully set forth herein.

111.   As a separate cause of action and ground for relief, KB alleges that Defendants, by using in commerce marks, names, and logos that comprise or contain "KB" in connection with the sale, offering for sale, and advertisement of services that are closely related to the services provided by KB under the KB® Marks, have caused a likelihood of confusion, deception, and/or mistake as to the affiliation, connection, or association of Defendants with KB, or as to the origin, sponsorship, or approval of services offered by Defendants, or by KB, in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

112.   Defendants' actions constitute unfair competition by false designation of origin within the meaning of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), and have caused and are likely to cause injury to the public, and have caused and are likely to cause KB to incur damages and suffer irreparable injury for which KB has no adequate remedy at law. KB is entitled to damages and injunctive relief pursuant 15 U.S.C. §§ 1114, 1116, 1117, 1118, and 1125.

## COUNT III

## SERVICE MARK INFRINGEMENT (CALIFORNIA COMMON LAW)

113.   KB incorporates the allegations in all proceeding paragraphs by reference as if fully set forth herein.

114.   KB owns the KB® Marks, and the KB® Marks have been in use in California in connection with home construction, sales, mortgage lending, and insurance services, and related services, since long prior to any date of first use of "KB" by Defendants. KB's KB® Marks are strongly associated with KB's services.

115.   As a separate cause of action and ground for relief, KB alleges that Defendants have been and are currently engaged in acts constituting infringement of

KB's KB® Marks under the common law of the State of California through Defendants' use in commerce in California of marks, names, and logos that comprise or contain "KB" in connection with the sale, offering for sale, and advertisement of services that are closely related to the services provided by KB under the KB® Marks and in a manner that creates a likelihood of confusion, mistake, or deception.

116.    Defendants' infringing conduct is causing and is likely to cause injury to the public, and is causing and is likely to cause KB to incur damages and suffer irreparable injury for which KB has no adequate remedy at law. KB is entitled to damages and injunctive relief pursuant to the common law of California.

## COUNT IV

## UNFAIR COMPETITION (CALIFORNIA COMMON LAW)

117.    KB incorporates the allegations in all proceeding paragraphs by reference as if fully set forth herein.

118.    As a separate cause of action and ground for relief, KB alleges that Defendants, by using marks, names, and logos that comprise or contain "KB" in connection with the sale, offering for sale, and advertisement of services that are closely related to the services provided by KB under the KB® Marks, has caused a likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with KB , or as to the origin, sponsorship, or approval of services offered or sold by Defendants, or by KB. These acts and business practices constitute unfair competition in violation of the common law of the State of California.

119.    Defendants' infringing conduct is causing and is likely to cause injury to the public, and is causing and is likely to cause KB to incur damages and suffer irreparable injury for which KB has no adequate remedy at law. KB is entitled to damages and injunctive relief pursuant to the common law of California.

**COUNT V**

**UNFAIR COMPETITION (CAL. BUS. & PROF. CODE. §§ 17200, *ET SEQ.*)**

120.    KB incorporates the allegations in all preceding paragraphs by reference as if fully set forth herein.

121.    As a separate cause of action and ground for relief, KB alleges that Defendants, by using marks, names, and logos that comprise or contain "KB" in connection with the sale, offering for sale, and advertisement of services that are closely related to the services provided by KB under the KB® Marks, has caused a likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with KB, or as to the origin, sponsorship, or approval of services offered or sold by Defendants, or by KB. These acts and business practices constitute a common course of unfair competition by means of unfair, unlawful, or fraudulent business acts or practices, in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

122.    Defendants' actions have directly and proximately caused and will continue to cause substantial and irreparable injury to KB, including customer confusion, injury to its reputation, and diminution in value of its KB® Marks and, unless restrained, will continue to seriously and irreparably impair the value of The KB® Marks, for which there is no adequate remedy at law.

123.    KB is entitled to injunctive relief under Cal. Bus. & Prof. Code §§ 17200, *et seq*., restraining Defendants from engaging in further unlawful conduct, as well as restitution of those amounts unlawfully obtained by Kingsbarn by its wrongful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, KB requests that the Court enter an order and judgment against Defendants:

A.    Permanently enjoining and restraining Defendants, and all persons acting in active concert or participation with them, from:

(1)   Using the marks, names, and logos KB, KB Property Advisors, KB Exchange Properties, KB Exchange Trust,





and any other mark, name, logo, or domain name that comprises or contains KB or is confusingly similar to KB's KB® Marks; and

(2)   Representing, directly or indirectly, that there is any connection between Defendants and KB, or doing any other acts or things calculated or likely to cause confusion, mistake or deception among members of the public or members of the trade as to the source, sponsorship, affiliation or approval of Defendants' services.

B.   Directing that Defendants, at their own expense, destroy all marketing, promotional, and advertising materials, and edit all websites and social media presences or postings, and cease use of all domain names or web page URLs or sub-URLs that bear or incorporate any mark, name or term featuring the marks, names, and logos KB, KB Property Advisors, KB Exchange Properties, KB Exchange Trust





and any other mark or name that comprises or contains KB or is confusingly similar to KB's KB® Marks;

C.    Directing Defendants to file, with the USPTO, an express abandonment of the Kingsbarn Applications and/or directing the USPTO to deny the Kingsbarn Applications, and directing Defendants to refrain from filing, in the future, any application to register a service mark or trademark that comprises or contains KB for use in connection with goods or services related to real estate or financial services;

D.    Directing Defendants to assign to KB any domain name they own that comprises or contains KB;

E.    Directing Defendants to file with this Court and to serve upon KB, within thirty (30) days after issuance of an injunction in this action, a written report setting forth in detail the manner in which Defendants have complied with the injunction;

F.    Awarding KB the damages it has sustained and the profits Defendants have derived as a result of the acts complained of herein, trebled, together with prejudgment interest, and its costs and reasonable attorneys' fees incurred in this action, to the extent permitted by law; and

G.    Awarding KB such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Under Fed. R. Civ. P. 38(b), KB hereby demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: May 15, 2025        **LATHROP GPM LLP**

By: */s/ Eric D. Sidler*

**ATTORNEYS FOR PLAINTIFF KB HOME**

80264941v1